UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| THE STATE OF NORTH DAKOTA, *et al.*,<br><br>   Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF INTERIOR, *et al.*,<br><br>   Defendants. | No. 1:24-cv-66-DMT-CRH<br><br>**Memorandum in Support of Defendants' Motion to Transfer** |

**Memorandum in Support of Defendants' Motion to Transfer this Case to the United States District Court for the District of Wyoming**

Pursuant to D.N.D. Civ. L.R. 7.1(B), Defendants submit this Memorandum in Support of their Motion to Transfer this Case to the United States District Court for the District of Wyoming. Plaintiffs' case aims to build upon that court's decision in *Wyoming v. U.S. Department of Interior*, 493 F. Supp. 3d 1046 (D. Wyo. 2020). That case involved all the parties to this case, many of the same operative facts, and a regulation that Plaintiffs allege is an earlier "variation" of the regulation challenged here. In the interest of justice, transfer is warranted under 28 U.S.C. § 1404(a), so that the court that penned the relevant decision may evaluate compliance with its judgment. Given the complicated technical, legal, and economic issues raised by the Complaint—which the Wyoming court has already taken the time to understand—Plaintiffs' attempt to litigate this action in the District of North Dakota wastes substantial judicial resources and presents forum shopping concerns that threaten judicial integrity.

## BACKGROUND

According to Plaintiffs' Complaint, a "first variation" of the challenged rule was heavily litigated in the District of Wyoming. Compl. ¶ 2, Dkt. 1. In 2016, the United States Bureau of Land Management ("BLM") promulgated a rule regulating the venting, flaring, and leaking of natural gas during oil and gas production from federal and Indian mineral interests. Waste Prevention, Production Subject to Royalties, and Resource Conservation ("First Rule"), 81 Fed. Reg. 83,008-01 (Nov. 18, 2016). The Plaintiffs in this suit—the states of North Dakota, Montana, Wyoming, and Texas—challenged the First Rule in the Wyoming court. And the Wyoming court issued three substantive rulings in that litigation. It denied Plaintiffs' motions for a preliminary injunction. *Wyoming v. United States Dep't of the Interior*, No. 2:16-CV-0280-SWS, 2017 WL 161428, at *12 (D. Wyo. Jan. 16, 2017). After further litigation, the Wyoming court granted in part and denied in part Plaintiffs' motions to stay certain provisions of the First Rule. *Wyoming v. United States Dep't of the Interior*, 366 F. Supp. 3d 1284, 1292 (D. Wyo. 2018), *order vacated, appeal dismissed sub nom. Wyoming v. United States Dep't of Interior*, 768 F. App'x 790 (10th Cir. 2019). On the merits, the Wyoming court found unlawful and vacated the challenged portions of the First Rule. *Wyoming v. U.S. Department of Interior*, 493 F. Supp. 3d 1046, 1086–87 (D. Wyo. 2020), *appeal filed* No. 20-8073 (10th Cir.).

In vacating portions of the First Rule, the Wyoming court adjudicated substantive questions of law related to this litigation. *See* Compl. ¶ 47 (describing Wyoming court's rulings); *id.* ¶ 49 (claiming that the challenged rule "contains many of the same fundamental defects that led to the vacatur of the" First Rule). For example, the Wyoming court held that the Mineral Leasing Act's ("MLA's") delegation of authority, also at issue in this case, "does not allow and was not intended to authorize the enactment of rules justified primarily upon the ancillary benefit of a reduction in

2

air pollution." *Wyoming*, 493 F. Supp. 3d. at 1086. Similarly, the Wyoming court held that BLM's authority over communitized oil and gas resources, which feature in the Complaint, "is limited to rates of development and production for purposes of avoiding the 'waste' of Federal mineral interests, similar to the rights of any participant in communitized arrangements, and is not a grant of general regulatory authority over the State and private mineral interests in the communitized units." *Id*. at 1082.

BLM then published a new rule specifically responding to the Wyoming's court's criticisms of the First Rule. *See* Waste Prevention, Production Subject to Royalties, and Resource Conservation ("Challenged Rule"), 89 Fed. Reg. 25,378, 25,388 (Apr. 10, 2024) ("this final rule makes substantial improvements in addressing the waste of Federal and Indian gas, while also addressing the Wyoming court's criticisms of the" First Rule). To start, "the BLM is expressly excluding the social cost of greenhouse gases from its decisions on any of the proposed waste prevention requirements, thereby addressing the Wyoming court's concern that the [First Rule] was inappropriately supported by 'climate change benefits.'" *Id.* And "to address the Wyoming court's ruling that the BLM's authority regarding unit and [Communitization Agreement] operations on non-Federal and non-Indian surface is limited, certain requirements in this final rule are narrower in scope than similar requirements in the" First Rule. *Id.* "Specifically, the final rule's requirements pertaining to safety, storage tanks, and [leak detection and repair] apply only to operations on Federal or Indian surface estates." *Id.*

Although Plaintiffs' Complaint repeatedly invokes the Wyoming court's decision as authority, Compl. ¶¶ 2, 16, 19, 25, 40, 46, 47, 51, 54, 68, 69, 75, 77, 88, Plaintiffs chose to file in the District of North Dakota rather than the District of Wyoming.

**LEGAL STANDARD**

Section 1404(a) governs the ability of a federal district court to transfer a case to another district. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). This provision reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…" 28 U.S.C. § 1404(a).

A motion to transfer therefore implicates a two-step analysis. The Court must first ask "whether the action may have been brought in the proposed transferee district." *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 883 (D. Minn. 2015) (quoting *Valspar Corp. v. Kronos Worldwide, Inc.,* 50 F. Supp. 3d 1152, 1155 (D. Minn. 2014)).

"If so, the Court must then consider the convenience and interest of justice factors." *Id*. "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). Because the Eighth Circuit has "declined to offer an exhaustive list of specific factors to consider in making the transfer decision," "district courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (quotation marks omitted); *see also Travelers Prop. Cas. Co. of Am. v. Hayashi*, No. 1:22-CV-00210, 2023 WL 7308450, at *4 (D.N.D. Oct. 10, 2023) (noting that transfer motions require "a case-by-case evaluation of the particular circumstances" (quoting *R.D. Offutt Co. v. Lexington Ins. Co.*, 342 F. Supp. 2d 838, 841 (D.N.D. 2004))). "The plaintiff's choice of forum is entitled to 'some weight' in the analysis, and the burden rests with the movant to overcome that weight by showing (1) the parties' private interests and (2) other public-interest considerations militate in favor of transfer." *Valspar Corp. v. E.I. DuPont*

4

*de Nemours & Co.*, 15 F. Supp. 3d 928, 931 (D. Minn. 2014) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013)). But "a plaintiff's choice of forum is entitled to minimal deference if the plaintiff chose the forum to escape an unfavorable ruling in a different district." *Kempton v. Life for Relief & Dev. Inc.*, No. CV-19-02156-PHX-DJH, 2019 WL 5188750, at *2 (D. Ariz. Oct. 15, 2019).

## ARGUMENT

I. **Plaintiffs could have brought this case in the District of Wyoming.**

"Section 1404(a) limits transfer of a civil action to 'any other district or division where it might have been brought.'" *Am. Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 261 (W.D. Mo. 1980) (quoting 28 U.S.C. § 1404(a)). There is no question that this action could have been brought in the District of Wyoming. Pursuant to 28 U.S.C. § 1391(e), a civil action against an official or agency of the United States may be brought in any judicial district in which "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(C). As Plaintiff Wyoming observed in its Petition for Review of the First Rule, "[v]enue is proper in [the Wyoming court] under 28 U.S.C. § 1391(e)(1)(C) because Petitioner State of Wyoming resides within the District of Wyoming." Pet. For Review of Final Agency Action ¶ 2, *Wyoming v. U.S. Dep't of Interior,* No. 2:16-cv-285-SWS, Dkt. 1 (Nov. 18, 2016). Accordingly, venue is proper in the District of Wyoming.

II. **Transferring the case to the District of Wyoming would serve the interest of justice.**

"The interests of justice factor is considered to be the most important factor in the analysis." *W. Energy All. v. U.S. Dep't of the Interior*, No. 1:16-CV-112, 2016 WL 11889030, at *3 (D.N.D. Dec. 19, 2016); *accord United HealthCare Servs., Inc. v. Celgene Corp.*, No. 20-cv-686-DSD-ECW, 2020 WL 7074626, at *3 (D. Minn. Dec. 3, 2020); *Radisson Hotels Int'l v.*

5

*Westin Hotel Co.*, 931 F. Supp. 639, 641 (D. Minn. 1996). Indeed, "[t]he interest of justice factor 'may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.'" *Bhd. of Maint. of Way Employees Div./IBT v. Union Pac. R.R. Co.*, 485 F. Supp. 3d 1048, 1062 (D. Neb. 2020) ("Courts weigh the interest of justice factor very heavily.") (quotation omitted).

This motion is in the interest of justice. "When considering the interest of justice, a court can consider: (1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantage of having a local court determine questions of local law. *R.D. Offutt Co,* 342 F. Supp.2d at 843 (citing *Terra Int'l, Inc.,* 119 F.3d at 696). The first two factors are of primary relevance to this case, as it is brought under the Administrative Procedure Act ("APA"). *City of W. Palm Beach v. U.S. Army Corps of Engineers*, 317 F. Supp. 3d 150, 156 (D.D.C. 2018) (transferring an APA challenge to the district with the strongest interest in the outcome of the case, despite plaintiff's choice of another forum).

A. *A transfer would benefit judicial economy.*

As the author of the decision invoked by Plaintiffs, the District of Wyoming is in the best position to hear this case. That court has heard multiple preliminary injunction motions seeking to enjoin the First Rule, including a lengthy hearing in which Plaintiffs participated. *Wyoming*, No. 2:16-cv-285-SWS, Dkts. 23, 87. And it has devoted significant resources to understanding the complicated history of oil and gas waste prevention, the attendant technological and economic considerations, and the relevant state regulatory regimes for all four Plaintiff States. *See, e.g., Wyoming*, 2017 WL 161428, at *12 (denying motion for a preliminary injunction);

*Wyoming*, 366 F. Supp. 3d at 1292 (staying implementation of First Rule's phase-in provisions); *Wyoming*, 493 F. Supp. 3d at 1087 (vacating challenged portions of First Rule).

This level of familiarity is invaluable. Even a brief perusal of the 54-page Waste Prevention Rule and its 93-page Regulatory Impact Analysis demonstrates the complexity of the Rule and of the existing program it amends. Compl. Attach. A, Dkt. 1-1, 89 Fed. Reg. 25,378–25,432 (Apr. 10, 2024). Transfer will capitalize on the District of Wyoming's experience with venting and flaring regulations and save this Court from expending resources studying the economics of venting and flaring, *Wyoming*, 493 F. Supp. 3d at 1075–76, the financial costs of leak detection technology, *id*. at 1076, the development of the prudent operator standard over the course of the last century, *id*. at 1072, and the venting and flaring regulations of the four Plaintiff states, *id*. at 1081, among much else.

Given the District of Wyoming's significant experience with natural gas waste prevention regulations, transferring the case would greatly conserve judicial economy. "[T]he existence of a related action in the transferee district weighs heavily in favor of transfer when considering judicial economy and the interests of justice." *Brown v. New York*, 947 F. Supp. 2d 317, 326 (E.D.N.Y. 2013) (citation omitted). Courts in this Circuit regularly transfer cases to forums that already have experience with the subject matter of a case. *E.g.*, *Burgard v. Alpha Prop. & Cas. Ins. Co.*, No. 5:21-CV-05060-KES, 2022 WL 2869604, at *5 (D.S.D. July 21, 2022) (transferring case because "'judicial economy also supports the transfer of cases to a court that has dealt with the same major issues in other cases'") (quoting 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3854 (4th ed. 2022)); *W. Energy All.*, 2016 WL 11889030, at *4 (transferring case because "it makes little sense to have multiple district courts address similar claims . . . when a single court could hear all claims"); *Herschbach v.*

7

*Herschbach*, 667 F. Supp. 2d 1080, 1089 (D.N.D. 2009) (transferring case, even though mineral estates at issue were located in North Dakota, to avoid "duplicative effort, waste of judicial resources, and unnecessary expenses").

These considerations of judicial economy apply with significant force in cases challenging related agency actions. *W. Energy All.*, 2016 WL 11889030, at *4 (transferring case challenging agency actions to courts hearing related challenges); *see also Bay.org v. Zinke*, Nos. 17-cv-3739-YGR, 17-cv-3742-YGR, 2017 WL 3727467, at *5 (N.D. Cal. Aug. 30, 2017) (transferring case to court that presided over challenges to "distinct" but related agency actions); *Villa v. Salazar*, 933 F. Supp. 2d 50, 56 (D.D.C. 2013) (transferring case challenging agency decision to court presiding over another challenge to same decision); *Home Builders Ass'n of N. California v. U.S. Fish & Wildlife Serv.*, No. CIVA 06-932 RWR, 2006 WL 3334956, at *1 (D.D.C. Nov. 16, 2006) (transferring APA challenge to court that had presided over "prior cases involv[ing] an administrative record of more than 30,000 pages and 140 pages of briefing"). Courts presiding over challenges to closely related agency actions "gained not only factual and technical knowledge regarding" those actions, *Bay.org*, 2017 WL 3727467, at *5, but also have already "begun dissecting" the "complicated statutory and regulatory scheme[s]" at issue, *Villa*, 933 F. Supp. 2d at 56. Additionally, as the administrative record for the First Rule was nearly 250,000 pages long, "the amount of judicial effort at stake is considerable." *Bay.org*, 2017 WL 3727467, at *2 (cleaned up). Because the Wyoming court has already reviewed hundreds of pages of substantive briefing, a lengthy administrative record, studied venting and flaring technology, and analyzed the pertinent statutory and regulatory scheme, considerations of judicial economy weigh heavily in favor of transferring the case.

Denying transfer, by contrast, would work against the interests of justice by increasing the "potential for conflicting judgments." *W. Energy All.*, 2016 WL 11889030, at *3. Plaintiffs quote the *Wyoming* decision at length, Compl. ¶¶ 16, 19, 25, 51, 68, 69, 75, 77, 88, and they frequently cite the *Wyoming* court's reasoning to support their claims, *id.* ¶¶ 40, 46, 47. Indeed, Plaintiffs' theory of the case seems to be that the Challenged Rule "contains many of the same fundamental defects that led to the vacatur of the" First Rule. *Id.* ¶ 49; *see also id.* ¶¶ 45–48 (discussing First Rule and *Wyoming* litigation); ¶ 51 ("Just like the 2016, the Final Rule again mandates a preference for flaring over venting."); ¶ 52 ("Continuing the errors of the [First] Rule…"); ¶ 54 ("BLM does not make any serious effort to explain how they attempted to address the Wyoming court's vacatur of the" First Rule…."); ¶ 56 (claiming similar error as First Rule); ¶ 91 ("Nothing has fundamentally changed from the vacated" First Rule…"). Litigating in this forum thus creates substantial possibilities for conflicting judgments about underlying legal and factual questions implicated by both the First Rule and the Challenged Rule. To avoid such "inconsistent judgments," the Court should transfer the case to the Wyoming court. *W. Energy All.*, 2016 WL 11889030, at *3; *Valspar Corp.*, 50 F. Supp. 3d at 1157 ("trying the claims . . . in one venue eliminates the possibility of inconsistent verdicts on those claims").

Denying transfer would also contribute to the congestion of the federal courts. *See W. Energy All.*, 2016 WL 11889030, at *4 ("In choosing to file in North Dakota, the Plaintiffs contributed to the proliferation of cases challenging the Plan Amendment in multiple federal courts."). The parties would likely spend more time briefing issues that the District of Wyoming already fully understands, to the detriment of the taxpayers who support both sides of this litigation. Finally, the District of Wyoming's substantial familiarity and experience with the

issues underlying this rule may well contribute to a swifter resolution of this case, to the benefit of the regulated industry.

> B. *The judicial economy benefits from transferring outweigh any deference owed to Plaintiffs' choice of forum.*

Plaintiffs' choice of forum (standing alone) does nothing more than shift the burden of proof to the transfer movant. *In re Apple, Inc.*, 602 F.3d at 913. As explained below, judicial economy and integrity considerations outweigh any deference owed to Plaintiffs' chosen forum.

Even where a plaintiff chooses its home forum, the "deference [owed to that choice] does not override the considerations of judicial economy" implicated by litigating substantially similar issues in two courts rather than one. *Celgene Corp.*, 2020 WL 7074626, at *4. "The plaintiff's choice of forum is . . . entitled to less deference where a related action is pending in a different forum[,] the action in the prospective transferee court was filed first and the subject matters of the two suits are very closely related." *Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*, 150 F. Supp. 3d 501, 509 (E.D. Pa. 2015). Thus, Judge Hovland transferred APA challenges to other forums already presiding over related challenges, even when a plaintiff resided in this District. *W. Energy All.,* 2016 WL 11889030, at *4 (according plaintiffs' choice of forum "little deference" even though North Dakota Petroleum Council was a plaintiff).

Plaintiffs' choice of forum is also entitled to little weight because their Complaint is rife with allegations describing the prior litigation in Wyoming. *See* Compl. ¶¶ 2, 16, 19, 25, 40, 46, 47, 51, 54, 68, 69, 75, 77, 88 (repeatedly citing *Wyoming* litigation). In such circumstances, courts conclude that the prior litigation constitutes operative facts occurring in that forum. *LNV Corp. v. Branch Banking & Tr. Co.*, No. 3:12-CV-3803-L BF, 2013 WL 1686462, at *6 (N.D. Tex. Mar. 12, 2013), *report and recommendation adopted*, No. 3:12-CV-3803-L BF, 2013 WL 1694421 (N.D. Tex. Apr. 18, 2013) (finding the "operative facts underlying this lawsuit occurred

10

in Florida" because "prior litigation related to this lawsuit was in" Florida); *cf. Desert Survivors v. US Dep't of the Interior*, No. 16-CV-01165-JCS, 2016 WL 3844332, at *8 (N.D. Cal. July 15, 2016) ("prior litigation in the Northern District of California is an operative fact" that "occurred in the Northern District" when the challenged agency action "was the direct result of a [prior] suit" in that district). In contrast, no operative facts occurred in this District, thus making Plaintiffs' choice of forum entitled to "significantly less deference." *Celgene Corp.*, 2020 WL 7074626, at *4 (citation omitted).

Nor is Plaintiffs' choice of North Dakota entitled to significant deference because of North Dakota's interest in oil and gas regulation. *See CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 408 (D. Minn. 2009) (despite having an interest in the litigated industry, "Minnesota does not appear to have any special or superior connection with the underlying events of the litigation in comparison to other fora"). Other Plaintiff States likewise have an interest in litigating oil and gas regulations in their home districts. *See* Compl. ¶¶ 8–10. This is not a case "[w]here there are only two parties to a dispute" and thus "good reason why it should be tried in the plaintiff's home forum if that has been his choice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). Instead, with multiple plaintiffs, "all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Id.*

Between these two forums, Wyoming has a greater interest in the subject matter of the litigation, as it has vastly more federal land than North Dakota. Whereas nearly half of Wyoming

consists of federal land, only a tiny fraction of North Dakota is federal land.[1] Because much of the Challenged Rule does not apply outside federal or Indian land, *see, e.g.*, 89 Fed. Reg. at 25,428 (43 C.F.R. § 3179.50), at 25,430 (43 C.F.R. § 3179.80), at 25,431–32 (43 C.F.R. §§ 3179.100–102), Wyoming has a much stronger interest in those portions of the rule as it has *eight times* more federal or Indian surface estate than North Dakota.[2] As to the other portions of the rule that affect wells producing from a federal or Indian mineral interest, Wyoming likewise has a greater interest in those portions of the rule because Wyoming has *five times* more federal or Indian mineral estate than North Dakota.[3] This disparity in mineral estate is depicted in the below map[4]:



---

[1] Congressional Research Service, Federal Land Ownership: Overview and Data, tbl. 1 (Feb. 2020) (showing that 46.7% of Wyoming is federal land, whereas only 3.9% of North Dakota is federal land), *available at* https://crsreports.congress.gov/product/pdf/R/R42346/18.
[2] *See supra* n.1 (showing that Wyoming has 29.1 million acres of federal land compared to 1.7 million acres for North Dakota). According to the Native Land Information System, Wyoming also has more Indian land (2.2 million acres) than North Dakota (1.9 million acres).
[3] U.S. Dep't of the Interior, Public Land Statistics 2022, Tbl. 1-3 (June 2023) (showing that BLM administers 43.1 million acres of federal or Indian (BIA) mineral estate in Wyoming, and only 8.4 million acres of federal or Indian mineral estate in North Dakota), *available at* https://www.blm.gov/sites/default/files/docs/2023-07/Public_Lands_Statistics_2022.pdf.
[4] BLM, Minerals Map, *available at* https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/leasing/regional-lease-sales/montana-dakotas.

That map demonstrates that while BLM manages nearly all the mineral estate in western Wyoming, it manages just a small fraction of the mineral estate in North Dakota. Wyoming also produces more federal or Indian oil and gas than North Dakota.[5] North Dakota's own documents show that *two-thirds* of its drilling and spacing units have no federal or Indian mineral interest.[6] Thus, whereas the Challenged Rule will not affect most oil production in North Dakota, the same cannot be said of Wyoming.[7] The Court should therefore transfer this challenge to Wyoming, whose "superior interest in this controversy is undeniable." *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 316 (D.D.C. 2015).

When one district has a comparatively greater interest in oil and gas regulation, the case should be transferred to the district with stronger interest. *Sierra Club v. Angelle*, No. 19-CV-03263-RS, 2019 WL 9899513, at *3 (N.D. Cal. Nov. 26, 2019). In *Angelle*, the California court transferred a challenge to an offshore drilling regulation to Louisiana, which had significantly more federal offshore drilling than California. Although California had some interest in the litigation due to plaintiffs' presence and some offshore drilling activity in California, the court found that California's interests were comparatively "weaker" than Louisiana's. *Id.* at *3–4. The *Angelle* court thus transferred the case given "Louisiana's interest in 'having localized

---

[5] U.S. Department of the Interior, Office of Natural Resource Revenue, Natural Resources Revenue Data for oil (showing that Wyoming produced 47 million bbl of federal or Indian oil, compared to 42 million bbl for North Dakota in Fiscal Year 2023) and for gas (showing that Wyoming produced 972 million MCF of federal or Indian gas, compared to 127 million MCF for North Dakota in Fiscal Year 2023).

[6] North Dakota Department of Mineral Resources, March Director's Cut 4 (Mar. 15, 2023) ("66% of ND spacing units contain no federal public or Indian minerals"), *available at* https://www.dmr.nd.gov/dmr/sites/www/files/documents/Director's%20Cut/3.15.23%20Directors%20Cut.pdf.

[7] *See* Statement of Gov. Mark Gordon of Wyoming before the House Committee on Natural Resources, Legislative Hearing on H.R. 3397 (June 15, 2023) ("Approximately 65 percent of Wyoming's oil and 79 percent of gas production are from federal minerals.").

13

controversies decided at home.'" *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). Similarly here, the Court should give less deference to Plaintiffs' chosen forum because Wyoming has stronger interests in this litigation.

The Court should further discount Plaintiffs' choice of forum to avoid forum shopping concerns. "[F]orum shopping . . . is repugnant to the integrity of the court and those persons seeking legal redress." *Thaxton v. United States*, 11 Cl. Ct. 181, 183 (1986). Plaintiffs' approach to this litigation provides two indicia of forum shopping. *First*, Plaintiffs elected against filing this lawsuit in the District of Wyoming, despite it being an appropriate venue with significant relevant experience repeatedly cited in the Complaint. Although Plaintiffs ultimately succeeded in vacating the challenged portions of the First Rule in Wyoming, they also lost on several key issues, such as their non-severability argument, *Wyoming*, 493 F. Supp. 3d at 1086, and their preliminary injunction motions, *Wyoming*, 2017 WL 161428, at *12. Plaintiffs have indicated an interest in relitigating those lost issues here. *E.g.*, Compl. ¶ 92(c) (requesting preliminary injunctive relief). Thus, Plaintiffs' chosen forum "is entitled to minimal deference if the plaintiff chose the forum to escape an unfavorable ruling in a different district." *Kempton*, 2019 WL 5188750, at *2; *Evans v. Arizona Cardinals Football Club, LLC*, No. CV WMN-15-1457, 2016 WL 759208, at *4 (D. Md. Feb. 25, 2016) (collecting cases).

*Second*, Plaintiffs' Statement Regarding Related Cases (Dkt. 1-4) indicates that Plaintiffs were shopping for a particular Court within this District. Rather than exhibit "appropriate candor" by identifying the previous venting and flaring litigation in *Wyoming* as a related case, *Evans*, 2016 WL 759208, at *2, Plaintiffs instead suggested that another case pending in this District—*North Dakota v. Dep't of the Interior et al.*, No. 1:21-cv-00148-DMT-CRH ("ND Leasing Pause Litigation")—was related because it "shares questions of law regarding

14

Defendants [sic] statutory obligations under the Mineral Leasing Act of 1920 ('MLA'), 30 U.S.C. § 180 *et seq.* and Federal Land Policy and Management Act of 1976 ('FLPMA'), 43 U.S.C. § 1701 *et seq,*" Dkt. 1-4, at 2. This case was then assigned to the same Court presiding over the ND Leasing Pause Litigation.

Plaintiffs' attempt to relate this case to the ND Leasing Pause Litigation—rather than the *Wyoming* venting and flaring litigation—appears to influence judicial assignments in a manner "repugnant to the integrity of the court." *Thaxton*, 11 Cl. Ct. at 183. "Two cases are related if 'substantially the same parties litigate substantially the same issues in different forums.'" *Maverick Tube, LP v. Westchester Surplus Lines Ins. Co.*, No. 4:07 CV 298 DDN, 2007 WL 5115436, at *2 (E.D. Mo. Aug. 6, 2007) (quoting *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005)). Whereas the *Wyoming* litigation involved substantially the same parties (all four Plaintiffs here and the Defendant U.S. Department of the Interior), three out of the four Plaintiffs here—Wyoming, Texas, and Montana—were not even parties to the ND Leasing Pause Litigation. That significant difference in parties alone demonstrates that the cases are not related. *See* Ex. A, Order, *Twin Metals Minn. v. United States*, No. 1:22-cv-2506 (D.D.C. Dec. 9, 2022) (rejecting attempt to "relate" cases because the "parties are different"). More significantly, the ND Leasing Pause Litigation involves lease sales and does not address regulations governing the venting or flaring of natural gas during production. *See* Court's Order Granting, in Part, and Denying, in Part, North Dakota's Motion for Preliminary Injunction (Order), ND Leasing Litigation, Dkt. 98, No. 1:21-cv-00148-DMT-CRH (Mar. 27, 2023) (not mentioning "venting" or "flaring"). Because Plaintiffs' Statement Regarding Related Cases identified the unrelated ND Leasing Pause Litigation—rather than the related *Wyoming* venting and flaring litigation—they have engaged in forum shopping behavior. *See Temple v. Clark*

*Cnty.*, No. 20-CV-5034-RJB-JRC, 2020 WL 2708830, at *11 (W.D. Wash. Apr. 22, 2020) (concluding that "Plaintiffs' behavior has the appearance of forum shopping" where they "were not forthcoming in disclosing the related cases" on their "civil cover sheet").

Courts evaluating similar attempts to influence judicial assignments through related case statements have directed the Clerk to judicially reassign the case. In *Jenkins v. Bellsouth Corp.*, the court disapproved of the nearly identical tactic where "plaintiffs had manipulated the assignment to [a specific judge] by representing, on the civil cover sheet submitted with the complaint, that this action was 'related' to another case then pending before [that judge]." No. CIV.A.CV-02-1057-S, 2002 WL 32818728, at *2 (N.D. Ala. Sept. 13, 2002). The court found that plaintiffs' tactic violated the random judicial assignment process intended "to promote the integrity of the judicial system." *Id.* at *6. And the court held that "this action should be referred to the Clerk for a neutral redrawing in accordance with standard, randomized selection procedures." *Id.*; *see also* Ex. A, *Twin Metals* Order 3 (reaching same remedy).

Here, the Court need not reach the judicial reassignment question, if it transfers venue to the District of Wyoming that presided over the related venting and flaring litigation. Because "[d]eference to a plaintiff's choice of forum is . . . negated by impermissible forum shopping," judicial economy considerations outweigh any deference owed to Plaintiffs' shopped forum. *Hartford Fire Ins. Co. v. Retail Mgmt. Sols., LLC*, No. CIV. 13-723 ADM/FLN, 2014 WL 4722366, at *3 (D. Minn. Sept. 22, 2014) (transferring venue to avoid forum shopping); *Merrick Bank Corp. v. Savvis, Inc.*, No. 4:08CV00674 ERW, 2008 WL 5146660, at *5 (E.D. Mo. Dec. 8, 2008) ("the Court gives little, if any, deference to Plaintiff's choice of forum due to . . . the perception of impermissible forum shopping"). In the interest of justice, the Court should transfer this matter to the District of Wyoming.

**III.     The other § 1404(a) factors weigh in favor of transfer.**

The convenience of the parties and witnesses will be best served by a transfer. As these cases are brought under the APA and will be decided on an administrative record, neither court is located nearer to sources of proof or witnesses. Should an evidentiary hearing become necessary, however, Wyoming would be centrally located for most parties, including BLM, whose Western Headquarters are in Grand Junction, Colorado. It is also closer to Plaintiff Texas than North Dakota. Similarly, lead counsel for Plaintiffs is located in Denver, Colorado, which is closer to Wyoming than to North Dakota. The convenience factors thus weigh in favor of transfer. *See City of W. Palm Beach*, 317 F. Supp. 3d. at 155 (Plaintiff's attorney's location was a factor weighing in favor of transfer); *W. Energy All.*, 2016 WL 11889030, at *4 (transferring case from this District where "[c]ounsel for the Plaintiffs [were] located in Denver, Colorado").

The relative congestion of the transferor and transferee courts also favors transfer. *See In re Apple*, 602 F.3d at 915 ("[d]ocket congestion is a permissible factor to consider in deciding a § 1404 motion"). The District of Wyoming has over 100 fewer cases per judgeship and takes several fewer months on average to dispose of civil cases.[8] And given the Wyoming court's existing "familiarity" with the First Rule, it "is better situated to address the issues in this lawsuit." *Burgard*, 2022 WL 2869604, at *5.

## CONCLUSION

The interest of justice weighs strongly in favor of a transfer. The District of Wyoming has expended substantial resources to become familiar with the facts and law underlying BLM's regulation of venting and flaring natural gas. And Plaintiffs' theory of the case appears to be that

---

[8] Federal Court Management Statistics (December 2023), *available at* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf.

17

the Challenged Rule is beset by the same problems that motivated the *Wyoming* court's vacatur of the First Rule. As the author of that decision, the Wyoming court is best equipped to test that theory. A transfer would preserve scarce judicial, state, and federal resources while permitting the Wyoming court to opine on regulations that affect the 43 million acres of federal or Indian mineral estate in Wyoming.

Respectfully submitted this 9th day of May, 2024.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

*/s/ Michael S. Sawyer*
MICHAEL S. SAWYER
Senior Trial Attorney
ERIK VAN DE STOUWE
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel.: (202) 514-5273
        (202) 305-0247
Michael.Sawyer@usdoj.gov
Erik.Van.de.Stouwe@usdoj.gov

*Counsel for Defendants*